**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RAYFORD L. TERRELL,
          *Defendant-Appellant.*

No. 08-10560

D.C. No.
2:05-CR-00923-
FJM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
December 7, 2009—San Francisco, California

Filed February 2, 2010

Before: A. Wallace Tashima, Susan P. Graber and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

**COUNSEL**

Daniel R. Drake, Drake Law, PLC, Phoenix, Arizona, for the defendant-appellant.

Karla Hotis Delord, Assistant U.S. Attorney, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

BYBEE, Circuit Judge:

Defendant-Appellant Rayford L. Terrell was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court enhanced Terrell's sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §§ 921-31, which raises the mandatory minimum sentence for convicted felons in possession of a firearm who have "three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). Terrell argues that the prior convictions relied upon for the enhancement—sexual assault under Arizona law, second-degree burglary under Arizona law, and second-degree burglary under Missouri law—do not qualify as "violent felon[ies]" under the ACCA. We hold that all of these prior offenses fit categorically within the ACCA's residual clause in that they "involve[ ] conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii). Thus, we affirm the district court's decision to enhance Terrell's sentence.

I

On May 31, 2005, as part of a large-scale operation to identify drug and firearm dealers, Phoenix Police Detective Matthew Shay met with Terrell, claiming that he wanted to purchase firearms. After several subsequent discussions and

meetings with Terrell and with Terrell's co-defendant, Cindy O'Quinn, Shay purchased a .380 caliber pistol from Terrell.

On September 20, 2006, Terrell was charged in the District of Arizona with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also alleged that, at the time of the offense, Terrell had previously been convicted of at least three felony offenses: (1) Burglary in the Second Degree on or about November 23, 1988, in Maricopa County, Arizona; (2) Sexual Assault on or about September 8, 1992, in Maricopa County, Arizona; and (3) Burglary in the Second Degree on or about March 3, 1993, in St. Louis County, Missouri. Following a two-day trial, the jury found Terrell guilty as charged.

The Presentence Investigation Report ("PSR") found that Terrell had "committed the instant offense subsequent to sustaining three felony convictions for crimes of violence, as defined in U.S.S.G. § 4B1.2(a)." According to the PSR, these prior convictions made Terrell "an Armed Career Criminal within the meaning of U.S.S.G. § 4B1.4 and [therefore] subject to an enhanced sentence under 18 U.S.C. § 924(e)," the ACCA.[1] These determinations resulted in an offense level of thirty-three. The PSR then found that Terrell's offense level of thirty-three and criminal history category of VI resulted in a Sentencing Guidelines range of 235 to 293 months.

Terrell objected to the PSR, arguing that the alleged prior felony convictions were not "violent felon[ies]" and therefore that Terrell was not subject to an enhanced sentence under the

---

[1]The definition of "violent felony" under the ACCA is nearly identical to the definition of "crime of violence" under § 4B1.2 of the Guidelines, so we have interpreted these provisions in a "parallel manner." *United States v. Jennings*, 515 F.3d 980, 990 n.11 (9th Cir. 2008). In order to avoid confusion, we will discuss Terrell's convictions in terms of the ACCA, but the analysis applies equally to § 4B1.2.

ACCA. The district court overruled Terrell's objections to the PSR and held that Terrell's prior convictions qualified him as an armed career criminal under the ACCA. The court stated:

> I think . . . the whole approach to the categorization of prior offenses as crimes of violence . . . is really needlessly complex . . . . And the case law that has developed . . . contributes, I think, to the wholesale confusion in this area . . . . We, I think, intuitively know what Congress is trying to do, and yet given all the gloss and all the complexity, its intent is sometimes frustrated . . . . [I]t strikes me that at the end of the day, whether [Terrell's prior offenses] fit nicely within the categorical approach or the modified categorical approach, that, at a minimum, they fit within the residual clause of [the ACCA] as violent felonies.

However, the court granted the government's motion for a downward departure of two levels for substantial assistance and sentenced Terrell at the low end of the post-departure Guidelines range: 188 months' imprisonment, followed by a five-year term of supervised release. Terrell timely appealed.

## II

Terrell argues that the district court erred in imposing an enhanced sentence under the ACCA, contending that his prior felony convictions do not qualify as "violent felon[ies]."[2] "We

---

[2]Terrell also argues that the enhancement of his sentence violated the Sixth Amendment because the prosecution did not prove his prior convictions to a jury beyond a reasonable doubt. He argues that the Supreme Court's rule announced in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), namely that prior convictions need not be proved to a jury, *see id.* at 247, has been called into question by the Court's subsequent decisions in *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, Terrell acknowledges that this position is contrary to Ninth Circuit law. *See United States v. Grisel*, 488 F.3d 844, 846 (9th Cir. 2007) (en banc). He raises the issue only so as not to forfeit it.

review de novo whether a prior conviction is a predicate felony under the ACCA." United States v. Grisel, 488 F.3d 844, 846 (9th Cir. 2007) (en banc). We first review the complex statutory and legal framework governing this case.

**[1]** Terrell was convicted under 18 U.S.C. § 922(g), which prohibits previously convicted felons from possessing firearms. In the ordinary case, the maximum penalty for violating § 922(g) is a fine and imprisonment for up to ten years. *See* 18 U.S.C. § 924(a)(2). However, a defendant convicted of violating § 922(g) who "has three previous convictions . . . for a violent felony" is subject to a fifteen-year mandatory minimum sentence. *Id.* § 924(e)(1). The ACCA defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B).

The government has conceded that none of Terrell's prior convictions fits within the first provision of the "violent felony" definition—those felonies that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Thus, for each of Terrell's prior convictions, we must apply the categorical and, if appropriate, modified categorical approach to determine whether the state offense fits within one of two portions of § 924(e)(2)(B)(ii) ("subsection (ii)"). *See Taylor v.*

*United States*, 495 U.S. 575, 602 (1990). First, we must determine whether the prior felony fits within the enumerated offenses in subsection (ii): burglary, arson, extortion, or crimes that involve the use of explosives. *See* 18 U.S.C. § 924(e)(2)(B)(ii). If not, we must determine, second, whether the prior felony fits within subsection (ii)'s residual clause, in that it "involves conduct that presents a serious potential risk of physical injury to another." *Id.*

**[2]** Our analysis of whether Terrell's prior convictions fit within the *residual* clause contains a unique element because of the Supreme Court's decision in *Begay v. United States*, 128 S. Ct. 1581 (2008). In *Begay*, the Supreme Court determined that subsection (ii)'s enumerated offenses—burglary, arson, extortion, and crimes involving the use of explosives— "indicate[ ] that the statute covers only *similar* crimes, rather than *every* crime that presents a serious potential risk of physical injury to another." *Id.* at 1585 (internal quotation marks omitted). In order to give effect to all of the words in subsection (ii), the Court held that the enumerated offenses "limit[ ] the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* The Court noted further that the enumerated crimes "all typically involve purposeful, violent, and aggressive conduct." *Id.* at 1586 (internal quotation marks omitted). Thus, even if Terrell's offenses "involve[ ] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), we must determine whether these crimes are "roughly similar" to the enumerated offenses—that is, whether they "typically involve purposeful, violent, and aggressive conduct," *Begay*, 128 S. Ct. at 1585-86 (internal quotation marks omitted).

### III

We now address, in turn, whether Terrell's sexual assault and burglary convictions fit within the ACCA's "violent felony" definition.

A

Arizona law provides that "[a] person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person *without consent* of such person." ARIZ. REV. STAT. § 13-1406(A) (emphasis added). The statute defines "without consent" to include circumstances in which "[t]he victim is coerced by the immediate use or threatened use of force against a person or property." *Id.* § 13-1401(5)(a). However, it also includes circumstances in which no force or threat of force is used, including where "[t]he victim is incapable of consent" because of mental disorder, drugs, or other similar impairments known to the defendant, *id.* § 13-1401(5)(b); where "[t]he victim is intentionally deceived as to the nature of the act," *id.* § 13-1401(5)(c); or where "[t]he victim is intentionally deceived to erroneously believe that the person is the victim's spouse," *id.* § 13-1401(5)(d).

Sexual assault is not one of the enumerated offenses in subsection (ii). Thus, we must decide whether Terrell's sexual assault offense fits within the residual clause. This determination requires us to determine: (1) whether the offense "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii); and (2) whether sexual assault under Arizona law is "roughly similar" to the enumerated offenses in that it "typically involve[s] purposeful, violent, and aggressive conduct," *Begay*, 128 S. Ct. at 1585-86 (internal quotation marks omitted).

1

Regarding the categorical approach, Terrell argues that, because the Arizona sexual assault statute does not require force or coercion, but rather a person can be convicted of sexual assault even if the victim permits the intercourse, his prior sexual assault offense does not fit categorically within the

residual clause. This argument is foreclosed by our decision in *United States v. Riley*, 183 F.3d 1155 (9th Cir. 1999).

In *Riley*, we held that a conviction for "attempted simple rape" under Louisiana law qualified categorically as a "crime of violence" in that it involved conduct that presented a serious potential risk of physical injury to another. *Id.* at 1159. Like the Arizona sexual assault statute, the Louisiana simple rape statute included circumstances in which no coercion or force was used, such as when the victim did not understand the nature of the act by reason of drugs or "unsoundness of mind," or when the victim submitted to the intercourse based on the belief that the defendant was her husband. *See id.* at 1158. We reasoned that the personal contact inherently involved in simple rape "coupled with the nature of this offense creates an atmosphere that fosters the potential for physical confrontation," so that "[e]ven in its least violent form, simple rape . . . could result in physical injury to the victim." *Id.* at 1159.

**[3]** In this sense, Terrell's case is indistinguishable from *Riley*, and thus he argues only that *Riley* is no longer good law in light of *Begay*. It is true that *Riley* (which was decided before *Begay*) did not consider whether the Louisiana simple rape offense was "roughly similar" to the enumerated offenses, and thus left open the question whether the Arizona sexual assault statute satisfies the *Begay* analysis. However, *Begay* does not affect the *Riley* court's determination that simple rape (a similar offense to sexual assault under Arizona law) involves conduct that presents a serious potential risk of physical injury to another even if it can be committed with the permission of the victim. Whether the Arizona statute satisfies *Begay*'s "roughly similar" test is an issue separate from the issue whether the statute involves conduct that presents a serious potential risk of physical injury to another. *See Begay*, 128 S. Ct. at 1585 (stating that the presence of the enumerated offenses "indicates that the statute covers only *similar* crimes, rather than *every* crime that presents a serious potential risk

of physical injury to another" (internal quotation marks omitted)). We turn now to the *Begay* analysis.

2

We have not decided the issue framed by *Begay*: whether sexual assault "typically involve[s] purposeful, violent, and aggressive conduct." *Id.* at 1586 (internal quotation marks omitted). Terrell argues that sexual assault under Arizona law does not satisfy this test because a defendant can be convicted under the Arizona statute even if the intercourse occurs with the victim's permission, such as when the defendant deceives the victim into thinking that the defendant is the victim's spouse. He relies primarily on our decision in *United States v. Christensen*, 559 F.3d 1092 (9th Cir. 2009).

In *Christensen*, we held that the defendant's conviction for *statutory* rape under Washington law did not constitute a "violent felony" under *Begay*. *Christensen*, 559 F.3d at 1095. Under Washington law, a person could be guilty of statutory rape simply by having sexual intercourse with a person of a certain age, regardless of whether the victim consented to the intercourse. *See id.* at 1093. We first noted that, "[b]ecause the Court in *Begay* used the conjunction 'and,' all three of its criteria—'purposeful, violent, and aggressive'—must be satisfied." *Id.* at 1095. We then held that, "because statutory rape may involve consensual sexual intercourse, it does not necessarily involve either 'violent' or 'aggressive' conduct." *Id.* (citation omitted).

Terrell's case is distinguishable from *Christensen* in three crucial ways. First, whereas the "typical" case of statutory rape does not involve violent and aggressive conduct, the "typical" case of ordinary sexual assault does indeed involve violent and aggressive conduct. Pure *statutory* rape laws like the law in *Christensen* are generally designed to target precisely the kind of situation that does *not* involve violent or aggressive conduct. Their purpose is instead to target defen-

dants whose sexual partners are, by law, considered too young to give lawful consent.

**[4]** In contrast, simple rape is "a *violent* crime because it *normally involves force*, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. Rape is *very often* accompanied by physical injury to the female and can also inflict mental and psychological damage." *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977) (emphases added). It is true that some sexual assault statutes, like the Arizona statute, have been drawn in such a way as to sweep in *some* cases that do not necessarily involve violence or aggression, such as when the defendant deceives the victim. However, this extra coverage does not change the fact that the "typical" case of sexual assault does involve violent and aggressive actions by the defendant. *See id.*

Second, even in those cases where the rape is "achieved by trickery or deception," that fact "does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint" that could then "easily escalate into a *violent* confrontation." *Riley*, 183 F.3d at 1159 (internal quotation marks omitted) (emphasis added). In this sense, the ordinary case of sexual assault involves at least as much violence and aggression as the ordinary case of burglary. Generic burglary, after all, is often accomplished in cases where no one other than the defendant is present in the structure being burglarized, and thus a violent confrontation will occur only if someone arrives and discovers the defendant. In contrast, "[p]ersonal contact is, of course, part and parcel of simple rape," *id.* at 1158, making the potential for face-to-face physical confrontation more likely in "deceptive" sexual assault cases than in the ordinary case of burglary.

On the other hand, the typical case of statutory rape does not involve this same risk of violent escalation. Ordinarily, there is nothing that the victim is likely to "figure out," *id.* at

1159, during the sexual activity that would cause the situation to escalate into violence. Thus, sexual assault under Arizona law is very different from the statute in *Christensen* despite the fact that both statutes punish certain kinds of sexual activity.

Third, the *Christensen* court relied explicitly on the fact that "statutory rape may involve *consensual* sexual intercourse" in finding that it did "not necessarily involve either 'violent' or 'aggressive' conduct." 559 F.3d at 1095 (emphasis added). The Arizona sexual assault statute explicitly requires that the defendant engage in sexual activity "*without consent*" of the victim. ARIZ. REV. STAT. § 13-1406(A) (emphasis added). Although Arizona law defines "without consent" to include certain circumstances where no force or coercion is used, *see id.* § 13-1401(5)(b)-(d), a lack of consent on the part of the victim is an express element of Arizona sexual assault, which was not the case in *Christensen.*

**[5]** "Short of homicide, [rape] is the ultimate violation of self," *Coker*, 433 U.S. at 597 (internal quotation marks omitted), and apart from homicide it is hard to imagine any crime that has a greater tendency to "involve purposeful, violent, and aggressive conduct," *Begay*, 128 S. Ct. at 1586. Thus, we hold that Terrell's prior sexual assault conviction qualifies as a "violent felony" under the ACCA's residual clause because it "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and is "roughly similar" to the enumerated offenses in that it typically "involve[s] purposeful, violent, and aggressive conduct," *Begay*, 128 S. Ct. at 1586.

B

**[6]** We turn now to Terrell's burglary convictions. Terrell was convicted of second-degree burglary under both Arizona and Missouri law. Arizona law provides that "[a] person commits burglary in the second degree by entering or remaining

unlawfully in or on a *residential structure* with the intent to commit any theft or any felony therein." ARIZ. REV. STAT. § 13-1507(A) (emphasis added). Importantly, a separate provision defines the term "residential structure" to mean "any structure, *movable* or immovable, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not." *Id.* § 13-1501(11) (emphasis added). Finally, the statute defines "structure" to include "any vending machine or any building, object, vehicle, railroad car or place with sides and a floor that is separately securable from any other structure attached to it." *Id.* § 13-1501(12).

**[7]** Similarly, Missouri law provides that "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a *building or inhabitable structure* for the purpose of committing a crime therein." MO. REV. STAT. § 569.170(1) (emphasis added). Missouri Revised Statute section 569.010(2), in turn, also includes movable objects in the burglary definition, providing that the term "inhabitable structure" includes "a ship, trailer, sleeping car, airplane, or other vehicle or structure" where people live, conduct business, assemble, or stay overnight.

We now address, in turn, whether these state burglary offenses fit within either the enumerated offenses or residual clause of subsection (ii) of the ACCA's "violent felony" definition. We hold that, although Terrell's prior burglary offenses do not fit within the enumerated offenses, they do fit within the residual clause.

1

**[8]** Burglary is one of the enumerated offenses in subsection (ii) of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(ii). In determining whether Terrell's prior burglary offenses fit within the burglary offense enumerated in the ACCA, we must apply the categorical and modified categorical

approaches to compare Terrell's prior burglary offenses to the "generic" definition of burglary set forth in *Taylor*, which contains three elements: "[1] unlawful or unprivileged entry into, or remaining in, [2] a building or structure, [3] with intent to commit a crime." 495 U.S. at 599.

**[9]** Because the government has conceded that Terrell's burglary convictions do not fit categorically within the generic burglary definition, our inquiry is whether, under the modified categorical approach, judicially recognized documents show that Terrell was necessarily convicted of generic burglary. *See Shepard v. United States*, 544 U.S. 13, 15-16 (2005).

With respect to Terrell's Arizona burglary conviction, the prosecution submitted an indictment, plea agreement, and judgment to the district court. The indictment alleges that Terrell, "on or about the 7th day of October, 1986, with intent to commit a theft or a felony therein, entered or remained unlawfully in or on the residential structure of L____ M_____, located at 2___ N. 13th St."[3] This indictment simply uses the same "residential structure" wording as the Arizona burglary statute, which includes both movable and unmovable structures. *See* ARIZ. REV. STAT. § 13-1501(11). It does not indicate whether the structure was "intended for use in one place" as opposed to movable, as is required by the generic burglary definition. *Grisel*, 488 F.3d at 848. The indictment also does not indicate whether or not the "intent to commit the crime was formed after entering the structure and/or the entry was privileged." *United States v. Bonat*, 106 F.3d 1472, 1475 (9th Cir. 1997) (noting that "Arizona courts have expanded the statute beyond generic burglary [by interpreting] the statute to allow a conviction even if the intent to commit the crime was formed after entering the structure and/or the entry was privileged"). The plea agreement and judgment are even less informative. The plea agreement simply refers to the offense as

---

[3]We have redacted the names and addresses of Terrell's victims.

"Count III: Burglary in the Second Degree, A Class 3 Felony," while the judgment refers to the offense as "Count III – Burglary 2nd Degree committed while on probation."

Regarding Terrell's Missouri burglary convictions, the prosecution provided copies of the charging documents, plea agreements, and judgment. None of those documents provides any indication of whether Terrell entered an unmovable structure as opposed to a ship, airplane, or other movable structure. *See* MO. REV. STAT. § 569.010(2) (including in its "burglary" definition "ship[s], trailer[s], sleeping car[s], airplane[s], [and] other vehicle[s] or structure[s]"). One charging document stated that Terrell "knowingly entered unlawfully [an] inhabitable structure, located at 8___ Cranberry Lane, and possessed by G_____ L___, for the purpose of committing stealing therein." Another stated essentially the same thing except for a different address and owner. The plea agreements and judgment simply referred to Terrell's offenses as burglary in the second degree, a Class C felony.

**[10]** In sum, the documents submitted by the prosecution do not demonstrate that Terrell was necessarily convicted of burglary of an unmovable structure, so under the modified categorical approach, Terrell's prior offenses do not fit within the ACCA's enumerated offenses.

2

**[11]** We turn now to the residual clause. To determine whether Terrell's burglary convictions fit within subsection (ii)'s residual clause, we must answer two questions: (1) whether the prior offenses "involve[ ] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii); and (2) if the first question is answered in the affirmative, whether Terrell's prior offenses are "roughly similar" to the enumerated offenses in that they "typically involve purposeful, violent, and aggressive conduct," *Begay*, 128 S. Ct. at 1585-86 (internal quotation marks omitted).

The Supreme Court has emphasized that the categorical approach does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *James v. United States*, 550 U.S. 192, 208 (2007). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* In light of these considerations, the Arizona and Missouri burglary offenses fit easily within the ACCA's residual clause.

Terrell argues that, because the state statutes may be violated by "entering a temporary, unoccupied structure," these offenses involve a lower risk of injury than generic burglary. And regarding the Arizona statute in particular, Terrell argues that, because the statute "lacks the element of criminal intent formed prior to entry, it does not embody the same risks as the generic burglary."

**[12]** Neither of these arguments is persuasive, because the Supreme Court and this court have consistently held that burglary involves conduct that presents a serious potential risk of physical injury to another, even in cases where the relevant state statutes were missing the same elements of generic burglary that are missing from the Arizona and Missouri burglary statutes in this case. In *James*, the Supreme Court held that Florida's attempted burglary offense fit within subsection (ii)'s residual clause even though the offense did not even require *entry* into a structure, let alone the "unlawful" entry required by *Taylor*. *See James*, 550 U.S. at 195, 197. The Court emphasized that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party." *Id.* at 203. Similarly, the lack of a requirement of unlawful intent prior to entry in Arizona burglary law does not change the fact that committing the offense, "in the ordinary case, presents a serious potential risk of injury to another." *Id.* at 208.

**[13]** As for the lack of an "unmovable structure" requirement, the argument that this omission precludes a burglary offense from fitting categorically within the residual clause is foreclosed in by our decision in *United States v. Mayer*, 560 F.3d 948 (9th Cir.), *cert. denied*, 130 S. Ct. 158 (2009). In *Mayer*, we held that first-degree burglary in Oregon was categorically a violent felony under the residual clause even though Oregon's definition of "building" included vehicles, aircrafts, and other movable structures, and was thus broader than *Taylor*'s generic definition. *See id.* at 954, 959. We relied on *James* to find that "[t]he risk of potential injury due to a face-to-face confrontation between the burglar and a third party is not lessened simply because, under Oregon law, the dwelling does not have to be a generic 'building' or 'structure.' " *Id.* at 963. Similarly, committing burglary under Arizona or Missouri law presents a serious potential risk of physical injury despite the statutes' broad definitions of "structure." *See United States v. Cantrell*, 530 F.3d 684, 695-96 (8th Cir. 2008) (holding that Missouri's second-degree burglary offense was categorically a "crime of violence" under the residual clause of the Guidelines' definition despite its broad definition of "inhabitable structure," because of "the risk of a violent confrontation between [the defendant] and the occupant, the police, or another third party").

**[14]** Having decided that Terrell's burglary offenses fit categorically within subsection (ii)'s residual clause, we must determine whether these offenses are "roughly similar" to the enumerated offenses in that they "typically involve purposeful, violent, and aggressive conduct." *Begay*, 128 S. Ct. at 1585-86 (internal quotation marks omitted). We have little difficulty concluding that they are. Simply put, it is hard to imagine that a state's "burglary" definition would not be at least "roughly similar" to generic "burglary." Terrell argues, however, that "it is not enough to look at the label of the offense." He argues that, because the state burglary definitions include movable structures, the crimes of which Terrell was convicted are not "similar, in kind as well as in degree

of risks posed, to the examples themselves." *Begay*, 128 S. Ct. at 1585. He also contends that, because "a lawful entry into a building poses a lesser risk than forced entry," the Arizona statute's lack of a requirement of criminal intent formed prior to entry means that Arizona burglary "does not necessarily involve violent, aggressive behavior."

There are two problems with Terrell's argument. First, it conflicts with *James* and *Mayer*. In *Mayer*, we held that Oregon's first-degree burglary statute satisfied the *Begay* test despite its inclusion of movable "buildings," reasoning that a burglar's entry into movable buildings "typically involves, much like generic burglary, . . . 'purposeful, violent, and aggressive conduct.' " *Mayer*, 560 F.3d at 962 (quoting *Begay*, 128 S. Ct. at 1586). And with respect to the Arizona statute's lack of a requirement of criminal intent formed prior to entry, *James* (although decided before *Begay*) conducted a similar analysis to the *Begay* test in finding that "the risk posed by attempted burglary is *comparable* to that posed by its closest analog among the enumerated offenses—here, completed burglary." *James*, 550 U.S. at 203 (emphasis added). The Court found that, even though Florida's attempted burglary offense did not require any entry into a structure, it posed the same kinds of risks as generic burglary because of the dangerous "possibility of a face-to-face confrontation" with a third party involved in any burglary. *Id.* Given that the Arizona law does not require "unlawful entry" but still requires "entry," making it even more like generic burglary than the statute in *James*, we reject Terrell's argument that the Arizona statute is not "roughly similar" to generic burglary.

**[15]** The second problem with Terrell's argument is that it essentially converts the *Begay* analysis into a restatement of the question whether the offense of conviction fits categorically within subsection (ii)'s enumerated offenses. Given our determinations thus far, Terrell's *Begay* argument would result in the following three-step analysis: (1) Terrell's bur-

glary offenses do not fit categorically within the enumerated offenses; (2) Terrell's burglary offenses fit categorically within subsection (ii)'s residual clause—that is, in the ordinary case, burglary presents a serious potential risk of physical injury to another; (3) under *Begay*, Terrell's burglary offenses are not "roughly similar" to generic burglary because they cover a broader range of conduct than the enumerated burglary offense. Under this logic, the *Begay* analysis (step 3) is not meaningfully different from the determination of whether the burglary convictions fit categorically within the enumerated offenses (step 1), a result that renders the residual clause (and step 2) meaningless. The more plausible interpretation of *Begay* is that a state burglary offense is almost always at least "roughly similar" to generic burglary even if the state offense is somewhat broader.[4]

[16] Thus, we hold that Terrell's Arizona and Missouri burglary convictions qualify as "violent felon[ies]" under the residual clause because they "involve[ ] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and are "roughly similar" to generic burglary, *Begay*, 128 S. Ct. at 1585.

## IV

Because the district court correctly held that Terrell had been convicted of at least three "violent felon[ies]" at the time he committed his felon in possession offense, we affirm the district court's decision to enhance Terrell's sentence under the ACCA.

AFFIRMED.

---

[4]However, we do not hold that a state burglary offense can *never* fail *Begay*'s "roughly similar" test.