**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

          v.

RAYFORD TERRELL,
             *Defendant-Appellant.*

No. 08-10560

D.C. No.
2:05-CR-00923-
FJM-1
District of Arizona,
Phoenix

ORDER

Filed September 13, 2010

Before: A. Wallace Tashima, Susan P. Graber and
Jay S. Bybee, Circuit Judges.

Order;
Dissent by Judge M. Smith

---

**ORDER**

The panel has voted to deny the petition for panel rehearing. Judges Graber and Bybee have voted to deny the petition for rehearing en banc, and Judge Tashima has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are denied. Judge M. Smith's dissent from denial of rehearing en banc is filed concurrently herewith.

13999

Judge M. SMITH, with whom Chief Judge KOZINSKI and Judges PREGERSON and REINHARDT join, dissenting from the denial of rehearing en banc:

Just one year ago, Chief Judge Kozinski presciently observed that we had on our hands "a train wreck in the making." *United States v. Mayer*, 560 F.3d 948, 951 (9th Cir. 2009) (Kozinski, C.J., dissenting from the denial of rehearing en banc). For years we had become accustomed to applying uniformly the *Taylor* categorical approach in our immigration and criminal sentencing jurisprudence. *Mayer* ended that practice. It developed a unique categorical approach for cases involving the Armed Career Criminal Act (ACCA) and the Sentencing Guidelines career offender provision. It also expanded those provisions' "residual clause" to cover nearly any crime. Chief Judge Kozinski warned of the growing number of casualties that would result in our circuit following our decision in *Mayer. See id.* at 954. Add Rayford Terrell as the next name on that list, and expect it to grow after the panel's decision here.

In this case the panel holds that we can find a categorical match—and apply a substantial sentence enhancement—without reference to a single state case or other objective measure of whether the state offense falls within the definition of the generic federal offense that Congress intended to be the basis for enhancement. Apparently, a panel's gut instinct is all that matters. It also holds that a state offense that lacks one of the generic crime's key elements—key because it makes the generic offense inherently violent—is "almost always" the same offense as the corresponding generic crime. As a result, we have officially abandoned the categorical approach in "residual clause" cases. Because I believe the panel's approach is contrary to the intent of Congress and Supreme Court case law, I respectfully dissent from the court's denial of rehearing en banc.

I

Determining whether an offense falls within the ACCA's residual clause involves two distinct questions. First, we examine the degree of risk associated with the crime to determine whether the offense "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). *See James v. United States*, 550 U.S. 192, 203 (2007) ("ask[ing] whether the risk posed by [the offense at issue] is comparable to that posed by its closest analog among the enumerated offenses—[burglary, arson, extortion, or crimes that involve the use of explosives]"); *Begay v. United States*, 553 U.S. 137, 141 (2008) (assuming that New Mexico's DUI statute involves conduct presenting such a risk). If we determine that the degree of risk posed by the offense is such that it presents a serious potential risk of physical injury to another, we move on to the second question: whether the offense is "roughly similar, in kind as well as in degree of risk posed" to the enumerated offenses in that it "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 143-45 (internal quotation marks omitted).

The fatal flaw in the panel's analysis is that it ignores the Supreme Court's repeated instructions that we answer these questions under the *categorical* approach first articulated in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *See Begay*, 553 U.S. at 141 (citing *Taylor* for "adopting this 'categorical approach' " and explaining that "[i]n determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion").

The categorical approach focuses on "the elements of the crimes of which the defendant was previously convicted." *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990); *James*, 550 U.S. at 202 ("[W]e consider whether the *elements*

*of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender."); *United States v. Riley*, 183 F.3d 1155, 1158 (9th Cir. 1999) (recognizing that under the categorical approach "we analyze only the elements of the crime charged"). Under the residual clause, then, the elements of the offense must satisfy: (1) *James*'s requirement that the degree of risk associated with the crime presents a serious potential risk of physical injury; and (2) *Begay*'s requirement that the offense typically involves purposeful, violent, and aggressive conduct.

As to the Arizona sexual assault offense at issue in *Terrell*, this means that we first ask whether "sexual intercourse or oral sexual contact . . . without consent," Ariz. Rev. Stat. § 13-1406(A), presents a serious risk of physical injury. I agree that our decision in *Riley*, 183 F.3d at 1159, governs this part of the analysis, because we held in *Riley* that non-consensual sexual intercourse presents such a risk.

At step two of the analysis, we must ask whether the elements of Arizona sexual assault typically involve purposeful, violent, and aggressive conduct. They do not. Under Arizona law, sexual assault does not require the use of force, the threat of force, or any sexual penetration. *See* Ariz. Rev. Stat. § 13-1401(5)(b)-(d). Because the statute's elements cover instances in which the offender acts neither violently nor aggressively, it does not categorically fall under *Begay*. *See United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where . . . a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), which was cited with approval in *James*, 550 U.S. at 208)).

The panel's opinion attempts to explain that Arizona sexual assault involves "violent" and "aggressive" conduct because

the Supreme Court told us in *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977), that *Georgia's rape law* is a violent crime. *See United States v. Terrell*, 593 F.3d 1084, 1090 (9th Cir. 2010). I concede that reasonable minds may disagree on how one should go about applying *Taylor*'s categorical approach and what exactly the Supreme Court has in mind when it repeatedly tells us that we are not to consider "how an individual offender might have committed [the offense] on a particular occasion." *Begay*, 553 U.S. at 141. But surely, in examining a particular state offense before us under the categorical approach, no one thinks we may look to what the Supreme Court has said about *another state's* entirely *different offense*. Yet that is precisely what the *Terrell* panel does. Arizona's sexual assault law covers conduct very different from the Georgia rape statute in *Coker*. The Georgia statute defined rape as "having carnal knowledge of a female, *forcibly* and against her will. Carnal knowledge in rape occurs when there is any *penetration* of the female sex organ by the male sex organ." 433 U.S. at 586 n.1 (emphases added) (internal quotation marks omitted). The Arizona statute requires neither force nor sexual penetration. *See* Ariz. Rev. Stat. § 13-1401(3) (including "masturbatory contact" within the definition of "sexual intercourse").

Nevertheless, relying on *Coker* and citing no Arizona cases, the panel holds that while some cases prosecuted under the Arizona law do not necessarily involve violence, the "typical" case does, which is enough to create a categorical match with *Begay*. *Terrell*, 593 F.3d at 1090. One is unable to discern from the panel's opinion how future panels, and more importantly future criminal defendants and their counsel, are to determine when the "typical" offense involves "violent" and "aggressive" conduct in the absence of an element in the state offense requiring it.[1] *Mayer* held that we determine the "typi-

---

[1]Indeed, the panel's interpretation of the role of "typicality" in this analysis draws the wrong lesson from *Begay*. "Typical" does not mean we can

cal" case by looking at whether "[m]ost of the cases" applying the state statute involve such conduct. *See Mayer*, 560 F.3d at 961-62. Chief Judge Kozinski argued that *Mayer*'s "most of the time" rule would prove difficult to administer. *See id.* at 952 (Kozinski, C.J., dissenting from the denial of rehearing en banc). He was wrong in this case, but only because the panel does not even bother to consult whether "most of the cases" applying Arizona's sexual assault offense involve "violent" and "aggressive" conduct. It cites no Arizona cases whatsoever.

In any event, *Mayer*'s "most of the time" rule was not correct either. The Supreme Court has given us at least one

_____

ignore the definition of the state offense. It relates to conduct covered by the *elements* of the state offense "in the ordinary case," *James*, 550 U.S. at 208, rather than some hypothetical case "in which even a prototypically violent crime might not present a genuine risk of physical injury," *id.* One would think that if the Supreme Court meant to depart in *Begay* from this long-standing understanding of *Taylor*'s categorical approach, it would stop relying on the same cases over and over again when explaining how to apply it. *See Begay*, 553 U.S. at 141 (citing *Taylor*); *id.* (citing *James*, 550 U.S. at 208-09, for the proposition that an offense "is a violent felony even if, on *some* occasions, it can be committed in a way that poses no serious risk of physical harm"); *James*, 550 U.S. at 207-09 (explaining that *Taylor*'s categorical approach does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony" and citing *Duenas-Alvarez*, 549 U.S. at 193); *id.* at 208 ("[T]he proper inquiry is whether the conduct encompassed by the *elements of the offense*, in the ordinary case, presents a serious potential risk of injury to another." (emphasis added)); *Duenas-Alvarez*, 549 U.S. at 193 ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.").

approach for determining what type of conduct is involved in the "typical" case that cannot be reconciled with either *Mayer* or *Terell*. In *Chambers v. United States*, 129 S. Ct. 687, 692 (2009), the government attempted to show that typically, failure to report to a penal institution involves violence and aggression by citing three cases clearly associating such violence and aggression with the offense. The Court rejected this flimsy evidence, relying instead on a Sentencing Commission report identifying *every federal case* over a period of two years. *Id.*

*Chambers* teaches that we should rely on empirical data when determining whether an offense "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted).[2] Without such objective evidence we are left with nothing but a panel's gut instinct as to what constitutes a violent felony; or worse, comparison to inapposite statutes from other states. The law of our circuit, when it comes to the ACCA, will turn on the arbitrary composition of the panel hearing each case. This can't be what Congress intended when it passed a uniform sentencing scheme for armed career offenders.

*Terrell*'s license to ignore objective indicia as to whether the offense typically involves violent and aggressive conduct has now been officially sanctioned by our court. This will only lead to more decisions like it. Already, our court has held that a theft statute encompassing pickpocketing constitutes a "crime of violence." *See United States v. Alderman*, 601 F.3d 949, 953-54 (9th Cir. 2010); *see also State v. Johnson*, 97 Wash. App. 1055 (Ct. App. 1999) (per curiam) (unpublished) (upholding a conviction under the theft statute at issue in *Alderman* where one teenager took twenty dollars from another teenager without his permission); *see also* Thomas W.

---

[2]At the very least, we should be pointing to an illustrative list of cases, *from the jurisdiction in question*, to show that the state offense is the kind of serious felony Congress intended to merit sentencing enhancement.

Hutchison et al., Federal Sentencing Law and Practice 1409 (2010) (questioning whether offenses such as pickpocketing should be considered a "crime of violence" under the residual clause absent empirical evidence that the offense will result in physical injury).

The insidious nature of the panel's treatment of the residual clause is even clearer in the panel's treatment of burglary under Arizona and Missouri law. The panel recognized that burglary under Arizona and Missouri law is defined more broadly than generic burglary. Neither burglary statute limits itself to unmovable structures, which is what the generic definition requires. See *Grisel*, 488 F.3d at 848-49. Arizona's statute does not even require unlawful entry. *See Taylor*, 495 U.S. at 598. Despite these categorical differences, the panel holds that a state burglary offense, no matter how much it may stray from the generic definition, is *categorically* "almost always" a violent felony. *See Terrell*, 593 F.3d at 1095. Our refusal to rehear this case means that we are developing a "catch all categorical approach," one which renders superfluous the question whether the state offense meets the enumerated offense's generic definition. *See also United States v. Matthews*, 374 F.3d 872, 876 (9th Cir. 2004) ("[E]ven though certain conduct (whether defined categorically or by a modified categorical approach) may present a serious potential risk of physical injury to another, it may still be excluded under the [residual] clause if including it would render the inclusion of the [enumerated offense] surplusage.").

If the state offense of conviction is missing critical elements of the enumerated offense's generic definition that make the offense inherently violent, the state offense clearly cannot "almost always" categorically involve the same purposeful, violent, and aggressive conduct as the enumerated offense. When the Supreme Court held in *Begay* that the enumerated offenses all typically involve purposeful, violent, and aggressive conduct, it did so in light of those offenses' generic definitions. *See Begay*, 553 U.S. at 145 (generically

defining burglary, arson, and extortion). In other words, a bur-glar who commits generic burglary, i.e., who enters a building unlawfully with intent to commit a crime, evinces "purpose-ful," "violent," and "aggressive" conduct. That's not necessar-ily true for a burglar who enters lawfully. Nobody would suggest that shoplifting is violent and aggressive, but the panel decision will likely send some felons to prison for 15 years because they got caught shoplifting in the past. *See State v. Belcher*, 776 P.2d 811, 812 (Ariz. Ct. App. 1989) ("The requisite intent to commit burglary may be formed after a person enters a store in all innocence.").

The panel reasons that the distinction between lawful and unlawful entry is inconsequential, since the Court in *James* held that attempted burglary, which requires no entry at all, posed the same risks as generic burglary. *See Terrell*, 593 F.3d at 1094-95. But the panel's cursory analysis ignores the fundamental role of this particular missing element. In *James*, the Court noted that "[a]ll burglaries begin as attempted bur-glaries," and explained that attempted burglaries—that is, attempts to enter a building *unlawfully*—where the offender is apprehended before he completes the burglary, may present an even greater risk than the typical completed burglary. *James*, 550 U.S. at 204. For support, the Court relied on the fact that the Sentencing Guidelines include attempt crimes in its definition of a "crime of violence," a "judgment . . . based on the Commission's review of empirical sentencing data and presumably reflect[ing] an assessment that attempt crimes often pose a similar risk of injury as completed offenses." *Id.* at 206.[3] In other words, the Court in *James* reasoned that

---

[3]The Court's reliance on empirical data provides further support for the notion that we should be employing such information in determining which crimes should be categorized as violent felonies. Indeed, relying on a 1992 opinion by then-Chief Judge Breyer, the *James* Court explained that "the Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between a particular offense and the likelihood of accompanying violence." 550 U.S. at 206 (internal quotation marks and brackets omitted).

attempting to enter unlawfully perhaps poses an even greater risk of injury than entering unlawfully and seeing the burglary through to its completion. It doesn't support the panel's theory, which we've now endorsed by refusing to rehear this case. Unlike the Court in *James*, the panel here provides no "empirical sentencing data" to support its view that Arizona's burglary offense is "even more like generic burglary than the statute in *James*." *Terrell*, 593 F.3d at 1095. All we have is the panel's gut instinct.

II

The panel's decision does not just allow future panels to ignore the presence of the ACCA's enumerated offenses. It also does the same for those crimes the Sentencing Commission has listed as prototypical "crime[s] of violence" under the Sentencing Guidelines.

The Sentencing Guidelines define a "crime of violence" nearly identically to the ACCA's definition of "violent felony." *Compare* 18 U.S.C. § 924(e)(2)(B), *with* U.S.S.G. § 4B1.2(a). As a result, we have always interpreted the two provisions "in a parallel manner," *see, e.g.*, *United States v. Jennings*, 515 F.3d 980, 990 n.11 (9th Cir. 2008), and recently held that "the same analysis the Court applied in *Begay*" controls whether an offense constitutes a "crime of violence" under Guideline § 4B1.2, *United States v. Coronado*, 603 F.3d 706, 710 (9th Cir. 2010). Indeed, as discussed above, the Court has turned to the definition of "crime of violence" in the Sentencing Guidelines for support in determining what constitutes a "violent felony" under the ACCA. *See James*, 550 U.S. at 206-07.

In addition to the four enumerated crimes that appear at the beginning of the residual clause, the Application Notes to section 4B1.2 enumerate additional "crime[s] of violence." *See* U.S.S.G. § 4B1.2 cmt. n.1. The Guidelines provide:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, *forcible sex offenses*, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).

Following the Supreme Court's *ejusdem generis* analysis in *Begay*, we must read these offenses as "limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Begay*, 553 U.S. at 143. The the list of enumerated offenses "indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.' " *Id.* at 142.

In its list of offenses, the Sentencing Commission tells us that "forcible sex offenses" are to be considered crimes of violence. In *United States v. Beltran-Munguia*, 489 F.3d 1042, 1051 (9th Cir. 2007), we held that the term "forcible sex offenses" in the Sentencing Guidelines requires the use of *force*. There, we examined a conviction for sexual abuse under Oregon law. We held that it was not a conviction for a "crime of violence" because the Oregon offense, like the Arizona offense at issue in *Terrell*, required merely a lack of consent, which could be proven if the victim was mentally defective, mentally incapacitated, or physically helpless. *Id.* at 1046. Although our court later held that "[f]orcible sex offenses . . . require more force than that inherent to penetra-

tion but need not require violent force," *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1146 (9th Cir. 2007), we still require a showing that the defendant has used or attempted at least some level of force on the victim," *id.* Arizona requires neither force—violent or not—nor penetration.

The panel thus introduces a serious incongruity between our circuit law on the ACCA's residual clause and the Sentencing Guidelines: To qualify as a "crime of violence," "forcible sex offenses" must involve at least some level of force; yet as a result of the panel's opinion, sex offenses that do not require any force will somehow qualify as both "violent felonies" and "crimes of violence" because they "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). Such a result is both irrational, and irreconcilable with *Begay*. There the Court's majority "rejected the approach of the dissent, which would have analyzed the risk of harm posed by the behavior without regard for whether the defendant's crime involved 'purposeful, violent, and aggressive' conduct." *United States v. Christensen*, 559 F.3d 1092, 1095 (9th Cir. 2009).

In contrast, the holdings of *Beltran-Munguia* and *Bolanos-Hernandez* are entirely consistent with *Begay* and *James*. For a sexual offense to constitute a "crime of violence" it must include "at least some level of force on the victim." *Bolanos-Hernandez*, 492 F.3d at 1146. Such a requirement ensures that the offender engaged in "purposeful, violent, and aggressive conduct," and "effectuate[s] Congress' purpose to punish only a particular subset of offender, namely career criminals." *Begay*, 553 U.S. at 147. And as the Court explained in *James* with respect to attempt crimes, the Commission's decision to include "forcible sex offenses" as the type of sexual offense it considers to be a "crime of violence" reflects its considered view that "forcible sex offenses" involve the requisite degree of risk and accompanying violence. *See James*, 550 U.S. at 206-07.

While the residual clause covers crimes not enumerated in the statute, *Begay* makes clear that the list of enumerated offenses "indicates that the statute covers only *similar* crimes." 553 U.S. at 142. An offense that does not require force, the threat of force, or sexual penetration, is simply not similar to a "forcible sex offense."

## III

The panel has effectively rendered the residual clause a catch *all* clause, potentially turning every recidivist into a violent, armed career criminal for sentencing purposes. The categorical approach we once used uniformly has been expanded beyond recognition, without regard to the offenses meant to limit its scope. The tail, according to the panel, now officially wags the dog. I respectfully dissent.